UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DOMINIC DECARLO,

                                Petitioner,

v.                                                                        Case No. 3:21-cv-11370

GEORGE STEPHENSON,[1]

                                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

Michigan prisoner, Dominic DeCarlo, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges DeCarlo's Wayne Circuit Court jury trial convictions of assault with intent to murder, MICH. COMP. LAWS § 750.82, carrying a dangerous weapon with unlawful intent, MICH. COMP. LAWS § 750.226, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and felony-firearm. MICH. COMP. LAWS § 750.227(b). DeCarlo was sentenced as a fourth-time habitual felony offender to a controlling prison term of 35 to 60 years.

DeCarlo claims: (1) his trial counsel ineffectively cross-examined two prosecution witnesses and failed to investigate an alibi defense, (2) the prosecutor committed misconduct by making a "civic duty" argument, and (3) police officers violated DeCarlo's

---

[1] The court substitutes Warden George Stephenson as the proper Respondent. *See* Habeas Rule 2(a), 28 U.S.C. § 2254.

1

Fourth Amendment rights when it obtained data from his cellphone. For the reasons that follow, the court will deny the petition, deny a certificate of appealability, and deny permission to appeal in forma pauperis.

## I. BACKGROUND

The Michigan Court of Appeals summarized the facts underlying Petitioner's convictions:

> On June 26, 2016, defendant shot an acquaintance, DeAnte Sullivan, three times. Sullivan testified that when defendant visited him for a brief time earlier in the day at the home of a mutual friend, defendant was acting strangely in that he was unusually agitated, searching through drawers, asking for money, and searching the home for items he could sell. After defendant left, Sullivan took a firearm from the table and put it in his waistband, thinking that he was going to be robbed. Sullivan testified that he was standing on the porch when defendant returned a short time later and stated, "You know what time it is"—meaning that he was going to rob Sullivan. When Sullivan asked if he was serious, defendant pulled a handgun out of his pocket and pointed it at Sullivan's chest. Sullivan recalled that defendant shot him in the chest as he pulled his own firearm from the holster in his waistband. Sullivan said that he fled while shooting at defendant, and was struck two times in the back as he fled. Sullivan was found by the police more than a block away and was transported to the hospital. While at the hospital, Sullivan identified defendant as his assailant, and defendant was arrested.

*People v. DeCarlo*, 2020 WL 7413640, at *1 (Mich. Ct. App. Dec. 17, 2020).

Following his conviction and sentence, DeCarlo filed an appeal of right. His appointed appellate counsel filed a motion to remand the case to file a motion for new trial in the trial court based on a claim that trial counsel was ineffective for failing to raise an alibi defense. The Michigan Court of Appeals granted the motion, and the case was returned to the trial court. (ECF No. 10-21, PageID.1293.) The trial court held an evidentiary hearing, but DeCarlo failed to present his alleged alibi witnesses. The court subsequently denied the motion for new trial. (ECF No. 10-19, PageID.1150-54.)

The case then proceeded to the Michigan Court of Appeals. Substitute appellate counsel filed a brief on appeal that omitted the failure to present an alibi defense claim. The brief instead raised three claims, including a claim that counsel was ineffective for failing to prepare for and adequately cross-examine two prosecution witnesses:

> I. Defendant DeCarlo was not afforded constitutionally effective assistance of trial counsel where his appointed counsel Hank Greenwood was disorganized, unprepared, and did not present a proper defense.
>
> II. The prosecutor committed misconduct that allowed the jury to reach an improper and incorrect verdict.
>
> III. The trial court erred in failing to suppress the evidence seized pursuant to overly broad search warrants which allowed the police to obtain three months of the data from the phone, without limitation, based on the allegations that Mr. DeCarlo shot Mr. Sullivan, in violation of Mr. DeCarlo's Fourth Amendment rights.

The Michigan Court of Appeals affirmed DeCarlo's convictions in an unpublished opinion. *DeCarlo*, 2020 WL 7413640. DeCarlo filed an application for leave to appeal in the Michigan Supreme Court, raising the same three claims. The Michigan Supreme Court denied the application by standard form order. *People v. DeCarlo*, 957 N.W.2d 795 (Mich. 2021)(Table).

## II. STANDARD

Title 28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

3

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

### III. DISCUSSION

### 1. Ineffective Assistance of Counsel

The habeas petition does not clearly state the factual bases for the ineffective assistance of counsel claim. The court will presume that DeCarlo intends to raise all three allegations that were presented to the state courts. DeCarlo first asserted in state court that his counsel failed to investigate and present an alibi defense. This assertion was the one raised by DeCarlo's first appellate attorney that resulted in the post-conviction evidentiary hearing. After the alleged alibi witnesses failed to appear at the hearing, the claim was abandoned and not raised again in the Court of Appeals. DeCarlo's new appellate counsel then raised two different allegations of ineffective assistance of counsel – that his counsel failed to adequately cross-examine the victim, Sullivan, and failed to adequately challenge the prosecutor's cell phone expert, Brue.

With respect to the first allegation concerning the alibi witnesses, the claim is unexhausted because DeCarlo did not present it to the Michigan Court of Appeals or

4

Michigan Supreme Court after the remand hearing. Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A habeas court may deny an unexhausted claim on the merits despite non-exhaustion. § 2254(b)(2).

DeCarlo's unexhausted allegation is meritless. Because DeCarlo presented no evidence at the state court evidentiary hearing regarding a viable alibi defense, he cannot show that his counsel performed deficiently or that he was prejudiced. *See Burt v. Titlow*, 571 U.S. 12, 23 (2013)("The absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance"); *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

With respect to the latter two allegations, they were rejected on the merits by the Court of Appeals:

> With regard to the cross-examination of the cell phone expert, Stan Brue, defendant argues that it was too long, unfocused, and without purpose, and also that it did not illuminate the science behind the cell phone data. However, the record reveals extensive questioning about how Brue collected and interpreted the data. Trial counsel began by asking Brue about the process of collecting and analyzing the data, and about the limits of certainty of Brue's knowledge about what happened with the movements of the phone. Trial counsel had Brue detail the calls that came in, confirming that the phone was in continuous use before the time of the crime. Counsel asked about the radius of cell tower coverage and changing variables that influence the area of a phone tower sector, and about the large amount of information generated from a cell phone account. Defendant asserts that the cross-examination "irritated the judge and tried the patience of the jury" because of irrelevant questions. The trial court interrupted trial counsel's questioning several times to ask about its relevance or to move the questioning along. Some of the questioning that was related to very specific aspects of Brue's work may have been pedantic, and not always directly related to Brue's testimony identifying the activity of defendant's cell phone near the area of the crime. However, the questioning appears to have elicited testimony that was helpful to defendant. Trial counsel highlighted

5

that law enforcement did not have access to GPS (global positioning systems) data to precisely track defendant's phone. Also, Brue acknowledged that there was a failure rate of cell phone data to map a sector, and a possibility of calls made from outside a sector showing as if they were made in a sector. Further, counsel established that Brue did not know the home sector of defendant's phone or whether it previously had been in the area of the crime. Trial counsel also elicited the fact that cell phone data does not identify who was in possession of a phone, and that the data could not definitively establish that the phone was at the scene of the crime, but only that the data was consistent with the phone being in the sector.

Most significantly, trial counsel relied on the information that was elicited on cross-examination to argue in closing that there was a reasonable doubt regarding defendant's guilt. In closing, trial counsel questioned what Brue's testimony had proven if he could not say who possessed the phone, who purchased the phone, or whether the phone previously had been in the area of the crime because all of the records were purposefully not examined. Trial counsel noted that Brue only tracked an hour of defendant's cell phone use, rather than the entire day, and that the cell phone testimony did not coincide with Sullivan's report that defendant left the area for 45 minutes before returning and shooting at Sullivan. Counsel highlighted that the data could not place the phone at a precise location, but only within a larger sector. Also, trial counsel noted that Sullivan did not mention defendant using his cell phone, but that Brue's testimony indicated that several calls were made in the sector at the time the shooting was supposed to have occurred.

"The questioning of witnesses is presumed to be a matter of trial strategy." *People v. Petri*, 279 Mich. App. 407, 413 (2008). Defendant argues that the extensive questioning of Brue only highlighted the importance of his testimony. However, after remand, at a hearing on defendant's motion for a new trial, counsel testified about his strategy with regard to Brue's testimony. He said that he was familiar with Brue, from cross-examining him in a previous trial, and had consulted with an expert who had previously testified in opposition to Brue in a federal case. He also filed a motion to suppress the cell phone records based on the assertion of an unlawful search and requested a stay, which was denied, to appeal the trial court's denial of his motion to suppress. He strategized that challenging the cell phone evidence was critical because he thought the credibility of Sullivan's testimony could be successfully challenged. Thus, the strategy emphasized the importance of discounting Brue's testimony as it was one of two main streams of incriminating evidence.

It appears that defendant's trial counsel was prepared to cross-examine Brue, and eager to challenge his testimony. Defendant does not

argue that his trial counsel failed to attack any aspect of Brue's testimony. Even though it became drawn out and involved minor details about Brue's work, the breadth of trial counsel's questions to Brue reflect an effort to elicit testimony that counsel was going to rely on in closing argument to attack Brue's testimony. Namely, defendant's trial counsel wanted to discount Brue's testimony that defendant's cell phone was in the area at the time of the crime by highlighting any imprecision in both the scope of Brue's investigation and the accuracy of the data. "A failed strategy does not constitute deficient performance." *Petri*, 279 Mich. App. at 412. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v. Rockey*, 237 Mich. App. 74, 76-77 (1999). In this case, defendant has failed to establish that the performance of his trial counsel was deficient with respect to counsel's cross-examination of Brue because he was employing a reasonable trial strategy.

Defendant also argues that his trial counsel was ineffective in his cross-examination of Sullivan; he asserts that irrelevant and repetitive questioning did not expose any inconsistencies. He references Sullivan's preliminary examination testimony. However, with the preliminary examination testimony trial counsel successfully demonstrated that Sullivan's trial testimony—that defendant shot him during defendant's second visit—was different than his preliminary examination testimony that he shot him on a third visit. Trial counsel explained that, although cumulative, testimony was elicited to lay a foundation and provide context for the impeachment testimony. Defendant also notes that the trial court had to ask counsel to move along a few times during Sullivan's testimony when counsel was asking Sullivan to elaborate on his escape from defendant. However, Sullivan's description of the route he took to escape defendant, and when he shot at defendant, evolved from general to specific during his testimony.

Defendant argues that the lack of a proper cross-examination denied him a defense. He specifically argues that the cross-examination failed to inform the jury that there was no evidence establishing that robbery was a motivation for the shooting. However, trial counsel's questions to Sullivan revealed that defendant did not ask for money when he confronted Sullivan on his second visit, and that nothing was taken from Sullivan throughout the incident. Cross-examination also introduced a possibly related incident—defendant had been involved in an auto accident in the same area of the shooting on the previous day and Sullivan witnessed the accident. Additionally, trial counsel's questioning informed the jury that Sullivan's report about the timing of events varied. Cross-examination clarified that Sullivan was standing on the porch when defendant returned and was within five feet when defendant shot him from a location in front of the porch. Finally, trial counsel had Sullivan describe how he gave a statement to

7

>hospital workers that was inconsistent with his testimony, and that he initially lied to the police by telling them that he did not have a gun.
>
>At the hearing on remand, trial counsel testified that, after the preliminary examination, he thought that Sullivan was an evasive witness whom he could effectively cross-examine. Counsel also stated that he and his investigator visited the scene of the shooting. Trial counsel's closing argument demonstrated that the strategy was to discredit Sullivan with the evidence that counsel elicited. Counsel argued that Sullivan's testimony was not credible. Counsel highlighted the uncertainty of Sullivan's testimony given that he told the hospital a different story of how he had been shot, and gave conflicting testimony about the timing of the visits and the number of times that defendant had visited Sullivan. Counsel noted that Sullivan said that he shot at defendant, but no shell casings were found, and that Sullivan gave an uncertain account of the path he took while eluding defendant. He noted that shells were found in the street, rather than in the grass in front of the stairs where Sullivan said that defendant approached him, and argued that the evidence for robbery as a motive was weak because it was limited to defendant stating, "you know what time it is."
>
>"Counsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v. Lane*, 308 Mich. App. 38, 68 (2014). In this case, defendant's trial counsel employed a reasonable strategy of attempting to discredit the complainant. He asked questions of Sullivan during cross-examination that produced testimony that could be used to argue in closing that Sullivan was not credible. Defendant does not identify any of Sullivan's testimony that trial counsel failed to attempt to discredit. That some of the questions became repetitive and increasingly detailed does not establish deficient performance. Thus, defendant has not established that the performance of his trial counsel was deficient in failing to challenge the complainant's credibility during cross-examination; challenging his credibility was a reasonable defense strategy that was appropriately executed.

*DeCarlo*, 2020 WL 7413640, at *1-3 (footnote omitted).

A violation of the Sixth Amendment right to the effective assistance of counsel is established where an attorney's "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

8

To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). When deciding whether counsel's errors prejudiced Defendant, the court "must consider the totality of the evidence before the . . . jury," on the assumption that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695.

On the whole, the standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential [] and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable[;]" but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The state court decision constituted a reasonable application of the clearly established standard. The record belies DeCarlo's claim that his counsel did not adequately cross-examine the victim or the cell phone data expert.

9

Defense counsel attacked the credibility of the victim in multiple ways on cross-examination:

- Counsel elicited an admission that the victim did not know the name of the friend whose house he claimed to be at in the hours prior to the shooting

- Counsel elicited an admission that the victim was illegally possessing a firearm.

- Counsel elicited an admission that the victim could not remember what DeCarlo said to him during the robbery

- Counsel elicited an admission that the victim was unsure as to the time the robbery and shooting occurred.

- Counsel impeached the victim's testimony by pointing to inconsistent testimony given at the preliminary examination.

- Counsel elicited testimony from the victim that he fired his gun at DeCarlo until he had no more bullets.

- Counsel elicited testimony that the victim made a statement regarding the incident at the hospital that was inconsistent with his trial testimony.

- Counsel elicited testimony that that victim saw DeCarlo get into an auto accident the day before the incident.

- Counsel challenged the victim regarding the fact that bullet casings were found in a location inconsistent with his version of the incident.

(ECF No. 10-8, at 81-91, 97-126, No. 19-9, at 4-12.)

Defense counsel likewise thoroughly challenged the opinion of the prosecutor's cell phone data expert witness:

- Counsel elicited an admission that DeCarlo's cellphone could have been outside of the shaded area of the expert's map that was admitted into evidence.

- Counsel elicited testimony that the data did not show who possessed the cellphone when it was used.

- Counsel elicited testimony that the cellphone companies did not provide GPS information to law enforcement.

- Counsel elicited testimony that the software the expert used to plot call locations had a "failure rate" that Brue manually corrected.

- Counsel had Brue testify in depth regarding the science behind cellphone data analysis, suggesting its limitations.

(ECF No. 10-9, at 132-151; ECF No. 10-10, at 9-28, 31-43.)

It was not an unreasonable application of the deferential *Strickland* standard, nor an unreasonable construction of the record, for the Michigan Court of Appeals to conclude that DeCarlo failed to overcome the presumption that his counsel competently and professionally challenged the testimony of the victim and the expert witness. As indicated, the record shows that counsel was not unprepared for these witnesses. He was familiar with the victim's prior statements and the other features of his story, and he was prepared to confront the aspects of his testimony to suggest the victim was not credible. Counsel was also obviously prepared to confront the expert witness, notably eliciting testimony that the expert manually corrected data to account for an error rate in the computer program he used – suggesting a reason for the jury to doubt the objectivity and accuracy of his analysis.

"[T]he question is not whether counsel's actions were reasonable[;]" but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). The state court's discussion and rejection of this claim show that reasonable arguments exist that defense counsel did not perform deficiently in his cross-examination of the victim and Brue. The claim is therefore without merit.

11

## 2. Prosecutorial Misconduct

DeCarlo asserts in his second claim that the prosecutor committed misconduct and rendered his trial fundamentally unfair in violation of due process by presenting a "civic duty" argument to the jury in its rebuttal argument. After stating the constitutional standard, the Michigan Court of Appeals rejected the claim on the merits:

> In rebuttal closing argument, the prosecutor stated: "Send a message to that guy." Defendant objected and, before the trial judge responded, the prosecutor clarified: "That's incorrect. Send a message to this defendant. There's nothing objectionable about that. That his behavior, that this shameless behavior is completely unacceptable. Thank you."
>
> Improper comments by a prosecutor unfairly introduce an issue that "encourages jurors not to make reasoned judgments." *Abraham*, 256 Mich. App. at 273. A prosecutor may not appeal to the jury to sympathize with the victim, *People v. Watson*, 245 Mich. App. 572, 591 (2001), or ask the jurors to convict based on their civic duty, *Abraham*, 256 Mich. App. at 273. However, prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *People v. Thomas*, 260 Mich. App. 450, 454 (2004). Prosecutors have "great latitude regarding their arguments," and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich. App. at 236.
>
> In this case, the prosecutor's remark was the last remark in rebuttal closing argument, and came after the prosecution had argued the evidence and defendant had responded. On rebuttal, the prosecutor responded to defendant's arguments that the evidence left a reasonable doubt as to defendant's guilt by summarizing the evidence and applying it to defendant's theory of the case, and then asserting the prosecutor's theory. The prosecutor then concluded: "Reasonable doubt. Commons [sic] sense, not hopes and dreams, not fantasy land, real life, real people. Send a message to that guy." Even though the specific comment did not state that it was based on the evidence—that the jury should send defendant a message based on the evidence—it was clear from the context of the remark that it was tied to the evidence of the charges and was in response to defendant's theory of the evidence. And the prosecutor quickly clarified that the message was that "his behavior, that this shameless behavior is completely unacceptable." Further, the trial court later instructed the jury that "the lawyers (sic) statements and arguments are not evidence." Instructions from the trial court to the jury may be "sufficient to eliminate any

prejudice that might have resulted from the prosecutor's remarks." *Thomas*, 260 Mich. App. at 454. "[J]urors are presumed to follow their instructions." *People v. Graves*, 458 Mich. 476, 486 (1998). Thus, defendant has failed to establish that the prosecutor's remark denied him a fair trial.

*DeCarlo*, 2020 WL 7413640, at *4.

The "clearly established Federal law" governing when prosecutorial misconduct rises to constitutional error is found in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012)(citing *Darden*). Prosecutorial misconduct violates the Constitution only if a prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (quoting *Darden*, 477 U.S. at 181). Even where prosecutors' statements are so extreme as to be "universally condemned," the inquiry remains whether due process was denied. *Darden*, 477 U.S. at 181. On habeas review, the AEDPA raises the bar even higher than the "high standard" set by *Darden*. *Halvorsen v. White*, 746 F. App'x 489, 499 (6th Cir. 2018). To obtain habeas relief, "[t]he misconduct must so clearly violate Darden that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'" *Id*. at 497 (citing *Williams*, 529 U.S. at 409).

DeCarlo challenges that following exchange:

[Prosecutor:] … Reasonable doubt. Commons [sic] sense, not hopes and dreams, not fantasy and, real life, real people. Send a message to that guy.

[Defense counsel]: Objection.

[Prosecutor]: What's the objection for?

The Court: What's the objection?

[Prosecutor]: Excuse me, Judge. I'm sorry.

The Court: What's the objection?

13

> [Defense counsel]: Using the words send a message. That's—
>
> [Prosecutor]: That's incorrect. Send a message to this defendant. There's nothing objectionable about that. That his behavior, that this shameless behavior is completely unacceptable. Thank you.
>
> The Court: Alright. Go off the record for one moment.

(ECF No. 10-10, at 115.)

With regards to civic duty arguments, the Sixth Circuit has noted that, unless the argument is calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible. *United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991). Here, it was reasonable for the Michigan Court of Appeals to find that the remarks did not rise to the level of remarks designed to incite prejudice in the jury. *See Puetas v. Overton*, 168 F. App'x. 689, 701 (6th Cir. 2006). The prosecutor's brief remark was made in rebuttal and was connected with the response to defense counsel's argument that reasonable doubt was present. The prosecutor derided that argument by equating the doubts raised by defense counsel to ones based on "fantasies" or "hopes and dreams." The prosecutor's follow-up comment to "send a message" to DeCarlo that his behavior was unacceptable could reasonably be viewed to be connected to the argument regarding whether the evidence of guilt left room for reasonable doubt. At least "fairminded jurists could disagree" with whether the argument was intended to invoke the jury's civic duty, and as such, this court must defer to the state court decision. *Harrington*, 562 U.S. at 101.

Finally, as noted by the state court, the trial court instructed the jury that the lawyers' arguments were not evidence, and they should base their verdict only on the evidence or lack of evidence presented. Jurors are presumed to follow the court's

instructions. *United States v. Powell*, 469 U.S. 57, 66 (1984). This defeats DeCarlo's argument that the purported improper argument deprived him of a fair trial. *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).

DeCarlo's second claim is without merit.

### 3. Illegal Search

DeCarlo's third claim asserts that police officers violated his Fourth Amendment rights when they lacked probable cause to obtain a search warrant for the data on his cellphone. The trial court held a hearing on the challenge, and it found the warrant request was properly supported by probable cause, and the request was not overly broad. (ECF No. 10-4.) DeCarlo renewed the claim on direct appeal, and the Michigan Court of Appeals likewise found that the request for the warrant was not overly broad and was supported by probable cause. *DeCarlo*, 2020 WL 7413640, at *5-7.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich.2005). DeCarlo raised his Fourth Amendment claim in the state courts and pursued relief there through his direct appeal. The state courts rejected the claim on the merits. He makes no allegations that presentation of his Fourth Amendment claim was frustrated by a failure of the state court procedures for presentation of that claim. Accordingly, review is barred under *Stone*.

As none of Petitioner's claims merit habeas relief, the petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The court will therefore deny a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, IT IS ORDERED the petition for a writ of habeas corpus is DENIED and the court DECLINES to issue a certificate of appealability.

                                              s/Robert H. Cleland
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated:  June 1, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 1, 2022, by electronic and/or ordinary mail.

                                              s/Lisa G. Wagner
                                              Case Manager and Deputy Clerk
                                              (810) 292-6522